I didn't buy a tech versus Kim Paxton. OK, Mr. Parkinson, when you're ready. May it please the court. David Parkinson on behalf of NIGEN Biotech LLC. Your honors, I thought I would begin where this ended on the pleadings, and that was the request from the court that we address the Singh decision, which we did. Both parties addressed the Singh decision in letter briefing. And having now considered both of the briefs, I just want to address that quickly. Singh involved a decision in which a state court cause of action for malpractice was brought against a trademark attorney. The trademark attorney, as part of that case, there was an issue raised as to whether or not the trademark issue had gained secondary meaning. And so the court looked at that issue to determine whether there was a substantial federal issue that would give rise to federal jurisdiction. In other words, a state. Develop that a little bit. I mean, what we're talking about is whether a defense, a federal defense, to a state cause of action can give a federal court jurisdiction. And in order to do that, you have to establish all of the Singh factors. Yes. Is that the way you understand it? No. The way I understand it is that for purposes of determining jurisdiction, and this was, the court held this in Montes versus Department of Navy, Fifth Circuit decision. How do you see the Singh factors as relevant here? We don't see them as relevant, Your Honor, because we have direct federal claims. A constitutional claim, or claim number two, addresses causes of action that arise directly under the Constitution. And for purposes of a motion to dismiss, and for purposes of determining jurisdiction, you look at the face of the pleading, all ambiguities resolved in favor of the non-moving party, and you find that the causes of action are direct federal claims. And so you don't get to Singh to decide whether, go into some sort of weighing analysis to determine whether or not the state law claims are dominant over the federal claims. You simply find jurisdiction. And that was, if you look at the cases that have been cited by the parties, this is essentially how it's gone. The Singh and the cases cited by the state actor all involve state law claims on the face of the complaint that have some sort of an aspect that involves federal law. This is completely different. This is more like the Ortiz-Bonilla case, which we've cited, which I believe is a 2013 case out of the First Circuit, in which the plaintiff, yes, brought a bunch of state law claims, but also asserted at the end a couple of federal claims. I mean, the way I understand your suit is, the attorney general wrote this letter to you saying, you can't advertise or sell your products because they took a position that was mislabeled. Yes, sir. And that we're going to prosecute you, or we're going to sue you under the DTPA if you persist in doing this. So they're threatening you with a state cause of action. So then your defense to that would be, no, that would violate my First Amendment rights. So why isn't that a defense to a state claim? Because the state claim was never brought. The DTPA claim was never brought. But the threat is there, and that's the reason you filed. Yes, the threat is there. But remember, they didn't just send a letter to us. I understand. They sent a letter to our retailers, national retailers, telling them that if they tried to sell our products in Texas without any investigation beforehand, they send these letters. They would be sued under the DTPA. They would be sued under the DTPA for violations of federal law. Well, now what is the violation of federal law? The labeling requirement. Well, but that's not the only way they could sue under DTPA. Yes, but what the DTPA letter said was that our advertising, my client's advertising, violated the labeling requirements of the FDA as to the labeling requirements applicable to prescription drugs. My client sells dietary supplements. And it's OK for the state actor to enforce a DTPA. But it is not OK. Also overarching that is a requirement that as they enforce the DTPA, that they conform to the requirements of the US Constitution. And as the claims are stated in our complaint, they did not do so. Well, that's your defense to the suit. No, those are affirmative claims that we have raised. I believe that's a claim. But the cause of action you have basically is I want to enjoin the attorney general from prosecuting me under the, or suing me under the DTPA. That's your claim. Well, I would characterize the claim as I want to enjoin them from stomping out my business before they prosecuted me. That is how I would characterize the claim, Your Honor. So it's what they did in the past, not what they did now. Yes, it's what they did in the past. Sending those letters had an incredible profound, keep in mind, take a step back. When you put products on a shelf nationwide, it costs millions of dollars. The advertising, the manufacturing, everything that goes into getting those products on the shelves. One state actor, without conducting an investigation, sends a letter to the retailers, knowing that the retailers have no dog in this fight, and achieves what they could not achieve in running the entire process of the DTPA. And the retailers, two of them national retailers, Walgreens and CBS. Yes, CBS. Thank you, Your Honor. Hold the products nationwide. The 11th Amendment basically bars any suit against the attorney general, except injunction. And you have the ex parte young exception for injunctions. But the ex parte young does not accept the injunction where you're trying to get recovery, or of course, the injunction is to stop future action. So ex parte young doesn't apply to prior action. So you've got the 11th Amendment problem with suing the attorney general for past actions. We don't see it that way, Your Honor, in that the action was in the past, but the harm is ongoing. What's your best case for that proposition? I believe it's N. Ray Young, Your Honor, where the court found that. No, but what's your best case for the fact that you get around ex parte young if you're doing what the attorney general did in the past? Yeah, and that would be Verizon Maryland, Your Honor, 535 U.S. 49, a 2002 decision out of the United States Supreme Court. What that case says is that when a complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. Prospective. Yeah, and it is prospective relief that we are seeking. Prospective in the sense of you're telling him to formally withdraw the letter and so notify the retailers? Yes. Is that what you're doing? Yes. I mean, that may be appealing as a policy matter, but how would the attorney general enforce the DTPA where the statute says you give them seven days notice before you can take enforcement action? Yeah, the enforcement action, the way that the DTPA in our mind should have been enforced was send a letter to the manufacturer. Let us respond, at least conduct an investigation, at least hear what we have to say, and then go through the process and the judicial determination that is anticipated by the DTPA before you involve third parties and go to this nuclear option, which is essentially what they have found is a way to end run the entire process and get what is effectively an injunction precluding us from selling our products. Not just in Texas. Keep in mind, these products were pulled nationwide as a result of one letter. It might be a different thing if there was an argument that these were affirmatively harmful to the public, you know, like tainted or something. But there's no argument like that, right? No. I mean, at best, it's that they say they're going to help with weight loss, but they're not really. No, but I mean, they claim they were mislabeled, and they allege the label falsely represented. They had some prescription drug in the product. I mean, surely the state can forbid that. I mean, I don't know whether that's true or not, but. Even if it's not a health risk, it would be an investment of money in a product that did not work. So there's a reason to protect the consumer. And Your Honor, had the state gone through the investigation and actually asked these questions, they would have found that the product actually has ingredients which have been proven to cause weight loss. That have been substantiated. What's that? Isn't that the argument? They might have these willy-nilly ingredients, but they aren't put together to actually function as you have advertised, or you have labeled it. No, I think that the labeling, especially considering this on a 12b6 standard, but I believe that the labeling is completely accurate under federal law. There has not been an enforcement action brought by any other state or the federal government, or even a class action lawsuit claiming that there's false advertising. Are they still on the shelves in other states? They're still on the shelves in small retailers in other states, yes. But the allegation, the national retailers obviously pulled them because it's very difficult to segregate how just, we're just going to sell this product not in Texas, but everywhere else. Or maybe the small retailers didn't get the letter. The small retailers that are not in Texas. I believe that there are a handful of those, yes, Your Honor. And again, to go back to Your Honor's statement, the complaint alleges violations of federal law at the record at page 729, 730, 731, 732, 733, and 734. Doesn't it also allege violations of state law? Our complaint does not, Your Honor. Oh, I'm sorry.   But it doesn't have a cause of action for intent of violation. Potential interference, yes, sir. But the state doesn't defend exactly what the district court did. Right. No, the district court, in our opinion, misapplied Henry Young and dismissed claims based on sovereign immunity analysis that simply does not apply to prospective relief against a state actor. And I think that that has essentially been conceded by the state. The state has conceded that with regard to the due process equal protection claims that we have stated in claims for prospective relief at page 22 of their brief. Ex parte Young would apply and allow you to enjoin prospective action by the attorney general if you meet the seeing factors. Yes. No. Again, Your Honor, I do not believe the seeing factors apply. I believe that because we have stated the cause of action direct under the Constitution that the seeing factors simply don't apply. As the First Circuit stated in the Ortiz-Bonilla case, quote, an assertion of a right under the Constitution of the United States necessarily raises an assertion of, oh wait, necessarily raises a federal question, period. And you look at the face of the complaint. If it raises a federal question, then you've got jurisdiction. You only have an equal protection claim or a due process claim if you have a valid constitutional complaint. Yes. Yes, and to go to that. You could have filed a declaratory judgment action saying that the DTPA, let's say they had just called you up. Couldn't you challenge the due process within the DTPA? If you're a public teacher, you're entitled to some kind of notice before you get fired. So I don't see why a business isn't entitled to some kind of rationale for what they're doing before their product gets pulled. I mean, even the Consumer Product Safety Commission doesn't do that. Right, Your Honor. Exactly. I mean, we would assert that there obviously is a requirement that we be provided some sort of. I'm not predicting what the outcome of a due process challenge would be, but it's on the face of the complaint. That's what I'm saying. Yes, and I think what, again stepping back, the question we need to ask ourselves is should any one state actor have the power to have this kind of an impact without some sort of due process requirement? This sending letters to national retailers, any state actor could send a similar letter and put anyone out of business that they have a problem with. And again, as we've shown and is on the face of the complaint as we've alleged, without conducting an investigation. Well, of course, you might. You'd have the state court. Just a limit to what the federal court will handle in an action against a state official. You've got the 11th Amendment problem. You could file this in state court and you wouldn't have had that problem. No, but Your Honor, what we've alleged, the federal claims that we've alleged are best heard in federal court, because that's who determines an election. You made that choice is all I'm saying. Yes, we did make that choice, Your Honor. OK. Anything else? Not with the time I have remaining. Thank you, Your Honor. Thank you. Mr. Davis. Good morning, and may it please the court, Bill Davis for the state. There are arguably two ways to view Nijin's complaint. If the court views the complaint as raising federal defenses to a state court DTPA action, there's no federal question jurisdiction for the reasons we explained in our letter brief. And if the court instead views the complaint as challenging the past acts of sending DTPA notice letters, there's no ongoing violation for purposes of ex parte young. I'd like to begin, if I may, with federal question jurisdiction. Why is it that teachers routinely sue for violation of due process? Well, because of the Nelson decision, there is an understanding in this circuit, at least. Those are 1983 suits, so maybe he should have sued the AG under 1983 for damages. Well, certainly, I mean, there are damages in this complaint, but those are barred by immunity. I think, Your Honor, if Your Honor is referencing the employment context, this circuit has said in Nelson that it can be an ongoing violation for termination, but I think the court has rightly limited it to that context. I mean, why is it not an ongoing violation? Because as long as the state doesn't withdraw this letter, then the retailers will, you know, then they've lost millions of dollars worth of business. I think it's arguably one way to look at the complaint is to look at it in those terms, but I think the better way to look at the complaint is to look at it in terms of defenses to a threatened DTPA suit. Well, I realize that younger abstention would apply if there were an ongoing prosecution under the DTPA, but you didn't even do that. I mean, that's what lends credence to this end run theory, in my view. You just sent the threat out to the major retailers of the product. I mean, it sounds abusive, unless you've got some substantial proof or had done an investigation or something. Well, here the proof is in the label itself, which is reproduced in the complaint, and it says HCG. But you didn't bring a prosecution. You still haven't brought a prosecution, what, two years later? No, that's correct, Your Honor, but the DTPA allows the state to bring these actions. It requires the notice letters to be sent, and it's hard for me to see how providing statutory notice could itself be a due process violation. But the question here, though, is whether there's federal jurisdiction. And under the Supreme Court's decision in Public Service Commission versus Wyckoff, the analysis turns on the essence of the complaint. Tell me another due process case that would not have arisen in a similar, I mean, you know, I was looking for cases that had a due process component to them, and I didn't see them in your briefs, so. I'm sorry, if the court is asking about the merits of the due process claim? Well, vis-a-vis Ex parte Young, yeah. I would say the only context in which I would understand there to be an ongoing violation here is the employment context by virtue of the Nelson decision. And so that doesn't apply here. But I do think that this case is controlled by the Singh elements. And if I could just explain that. On page 248 of Wyckoff, the Supreme Court directs all courts, all federal courts, to look to the essence of a complaint when it is a declaratory judgment action that arises in reaction to a state court suit. The threat of it, not even necessarily the filing of it, a potential state court suit is the language that the Supreme Court uses. And here, we have a complaint that raises constitutional claims that are, in essence, defenses to that suit. That's not the case with Ex parte Young. I mean, that may well dispose of declaratory judgment, but Ex parte Young says you violated the Constitution. Right, but I think these are two separate issues, because first of all. They are. That's why you're not responding to what I'm asking about due process in Ex parte Young here. Our response on Ex parte Young is that there is no ongoing violation. But in our view, that's not the right way to look at the essence of this complaint. And that's the point I'm trying to make in response to Your Honor's question. And the Ortiz Bonilla case that Mr. Parkinson cited in the supplemental letter is looking to the wrong part of the lawsuit. Because we are in the declaratory judgment setting, we look to the anticipated or potential state court suit. And one point I do want to make about Ortiz Bonilla is that in footnote four of that decision, the First Circuit cites this court's decision in Howry v. Allstate Insurance Company. And the citation for that is 243 F3 912. That case is pertinent here because it involved a DTPA claim that made allegations that the defendant violated the DTPA and that the same conduct also violated Federal Trade Commission statutes, rules, and regulations. And the question was, was that assertion of parallel violations, in other words, one set of conduct that violates state law and federal law, was that enough to bring it within federal jurisdiction under what is essentially the Singh elements? It was decided before Singh, but the analysis was the same. The court went through all of the elements in Howry and said, no, there's no federal question jurisdiction. And the primary focus of what it said was that even though there was a reference to federal law, federal law was not necessary to resolving the state court claim. And that's exactly what we have here. That falls under the first element of Singh. Under the second element, the question is whether the issues of federal law, and here, the issues that Nijgen has suggested are whether these products qualify as dietary supplements and whether they're misbranded, whether those issues are disputed. And they're not, because there's been no need for the state to dispute them. Again, we can look at the labels and see HCG. Again, it's been nearly three years, and you haven't pursued this. What does that imply? Well, all of this has. What that implies is either that there's no merit or that you accomplished what you did by not using due process, by just threatening. And Your Honor, if any. Am I correct? I mean, what other alternative, what other possibility is there? The record doesn't reflect why a DTPA action wasn't brought, and I don't know the reasons or how the Consumer Protection Division in my office chooses to allocate its resources. I do know that it goes after companies that it feels are violating the law, and that's very much the case here. And if I could return, though, to the Singh factors, the third factor is whether the federal issues are substantial. And here, the court looks to Merrill Dow. There's no private right of action under the federal FDCA. There's no preemption. Excuse me. And then finally, would taking jurisdiction here disturb the balance between federal and state adjudication of these claims? And this may go to one of your points, Judge Jones, in that if anybody who got a DTPA notice letter could run to federal court and raise defenses and have the federal courts adjudicate state law DTPA claims, then there would be a massive shift of these cases to federal court. And as I believe the court may have suggested in the first 15 minutes. Then maybe the AG, maybe the answer to that is that the AG ought to do its, or the Consumer Protection Division ought to do its research first before it sends out threatening letters. Well, certainly there is political accountability for what the Attorney General pursues. And it stands by what it's, our office stands by what it has pursued here. I mean, the question arises, why do you pick this HCG business as opposed to all the other diet supplements that are on the market? Right, but when we have. We still have an obesity problem despite the multiplicity of those things on the market. Yes, but when we have a label that has in bold letters HCG, and HCG is not in the product, and we are depending, apparently, on consumers knowing the difference between a hormone and the full spectrum of a hormone's amino acid isolates. And the label says that in the fine print. And then it says, and the gravamen of your objection in that letter, I thought, was that this is an off-label use of HCG components according to the FDA, and therefore wouldn't be allowed or would be problematic under the FDA rules. The letter referred to FDA requirements simply by way of background. There are multiple ways that the DTPA allows the state to pursue action. And for that, I mean, that's part of the reason. I don't dispute that, but how many multiple ways were stated in that letter? I believe the letter referred to either four or five separate prongs of the DTPA. Well, I know, but not in any way that they could, generically, it referred to them. It referred to the amino acids and not the specific ingredient. And I don't know that a DTPA notice letter needs to do more than cite the factual premise for why there is a potential action. Do we have a due process claim here? There is a due process claim that NIGIN. What's the substance of the claim that's made in the papers in the district court? The claim, as I understand it, is that by sending the notice letters, that was itself a violation of due process because of the result it had. The problem I have with that is what other process could ameliorate that problem. We already required it. Was there any negotiation or contact with the defendant before? Yes, Your Honor. Well, no, I'm sorry. If you're asking when it happened, it was after the letters were sent. Then NIGIN's attorney met with attorneys in our office to try to resolve the dispute and were unsuccessful in that. And they met twice. That's correct, Your Honor. That was recorded. Yes, Judge Jones. So what's the constitutional violation being alleged? Well, there are several. Free speech? Commercial free speech? Yes, Your Honor. That's the first constitutional claim that, again, in our view, is a defense to a DTPA suit. I mean, to me, it's not a question where the case is going to end up because I'm not predicting how it would come out. But I'm just very troubled about the allegations. Now, what would you have said in response in the state court? Is there an impediment to their filing in state court? Sometimes we see, in response to these letters, state court declaratory judgment actions filed. We do have sovereign immunity defenses. They're obviously different from the 11th Amendment issues here. But in response to those actions, sometimes our office will counterclaim for the DTPA violations. And the litigation will proceed in state court, whether we have a valid DTPA claim or not, whether they have valid constitutional defenses to that. All of that can happen in state court. Yeah, but then you'd have evidence, and you'd have a trial-type proceeding, and so on, right? That's correct, Your Honor. But what occurred to me was a due process case we had some years ago that had to do with throwing a physician out of a government hospital. And it was done without notice to the man after there had been serious complaints of malpractice. And we found there was no due process violation there because it was a matter of necessity. And the public safety was involved. And I was just wondering, what's the analogy here? Because you make no allegation of public safety. I mean, sure, it's police power. But it's not the safety regarding a tainted product or dangerous product. Well, Judge Jones, I would agree. So you, representing the Attorney General of Texas, are saying that it's OK to scare a product off the market without any kind of previous proceeding. Well, Your Honor, the statute actually allows for a DTPA action to be brought, even without a notice letter, if circumstances such as you suggested exist, if there's some sort of risk of sending that letter and what that might cause the potential defendant to do. But here, the statute sets up a mechanism that does provide people notice that these claims are coming. But you go beyond the manufacturer to his customers. That's right, because they would also be liable for the same DTPA theories. But it's not proven at that point. That's right. It's a challenge. That's correct, Your Honor. And that's why these are defenses to that suit. They are defenses to the potential suit, to use the language of Wyckoff. And if the court doesn't view it that way and looks to the constitutional claims as standing on their own force from the complaint, despite the declaratory judgment nature of the action, then our argument is that it's not an ongoing violation for purposes of Young, because we're talking about the past act of sending notice letters. There is ongoing harm, certainly. What's the best case that you have for closing Ex parte Young for procedural due process? I don't. I mean, other than, quote, ongoing. We have the argument over what's ongoing. I don't. First of all, there aren't a lot of cases on ongoing violation. And some courts combine that with prospective relief. But there are instances in which you can request prospective injunctive relief, but there's no ongoing harm. And the court's decision in Cantu Services versus Rovery is an example of that. Well, I thought about that. And that was a contract case. But this is a, I mean, there is ongoing harm until and unless the AG were to withdraw the letter or prosecute and succeed. And the injunction requested here is not to withdraw the letter. The injunction is that the AG can't proceed until it has reliable proof. And as we pointed out in connection with our addressability argument, that proof could be simply going out and getting a consumer poll to show that having the letters HCG on a product prominently displayed when that's not in the product is deceptive or misleading. Well, if it were up to me, which it probably won't be, but if it were up to me, I would leave that for the district court on remand. Because it seems to me you can frame an injunction in a number of different ways. But rather than get into that level of detail at the appellate court here, if we had jurisdiction. And, Your Honor, my point being simply that that is not injunctive relief that the court has requested for withdrawing the letters. Your position is the suit doesn't get out the gate because there's no federal question of jurisdiction. Is that what your first point is? Yes, Judge Davis. That has nothing to do with 11th Amendment or the Singh factors or anything else. Well, it does have to do with the Singh factors. That's part of the federal question jurisdiction analysis. But you're right. That is a complete answer, a complete jurisdictional answer to this lawsuit. The question under Wyckoff, and as this court recognized in Garr versus Quirk, is we look at the essence of the complaint. What's the essence of this complaint? And here, because complaints don't typically in federal court say these are defenses to an anticipated state court suit. But we have a complaint here that was filed only because of the threatened DTPA action. It repeatedly references that potential lawsuit. And to point the court to one of the constitutional claims, this is on page 731 of the record, paragraph 83. That's the closing paragraph of the First Amendment allegation. It essentially says we shouldn't have to stand for this DTPA action because we have a First Amendment right to label the products this way. That is a defense to a DTPA claim. And they haven't stopped labeling the product that way in any event, right? No, that's right. I mean, that's the point of dispute. And I believe it's an ongoing issue in that respect. And the other thing is in state court, we often see these kinds of claims, First Amendment, other constitutional claims, brought as defenses to DTPA suits. But if there's no suit, what do they do in state court? You say they sue for declaratory judgment, and then you raise immunity defenses in state court. That's right. Sometimes we counterclaim, and it's adjudicated there. They, of course. But you're not even promising to do that. No. So that's the bottom line. You've got a grievous injury, but no remedy. And if that, yes, Your Honor. And if that is the way the court looks at it, the question is whether there's an ongoing violation. But again, we don't get to that because there's no federal question jurisdiction. And the only other point I would make on the complaint is that the only reason to insert federal into the potential allegations of what the state was intending to bring is to try to meet the first element of Singh. And so that is a further indication that these are anticipated defenses that Singh applies. And especially under the Howry decision cited in Ortiz Bonilla, the analysis disfavors federal question jurisdiction at every turn. Those are the points I intended to address. If there are no further questions, I would ask for the court to affirm the dismissal order in full. Thank you, Mr. Davis. OK, Mr. Parkinson, back to you. Yes, on the jurisdictional issue, Your Honors, again, not one case cited by the state stands for the proposition that standalone constitutional claims are subject to the Singh analysis. Not one. The GAR decision that he just cited was a medical malpractice deck action. It was a state law claim that had, as a component, a federal issue. But if the court, and I believe there was, Houthman was one of the cases that was just cited. And in Houthman, there was an interesting statement by the court. And this is found at 118 F sub 2nd 714. Quote, plaintiff is therefore master of the claim in that a plaintiff may invoke or avoid federal jurisdiction based upon the face of the complaint. That's the analysis that has to happen. And it has to happen because the burden upon courts any time that there is a federal question claim raised, a constitutional claim, that happens to be connected to some sort of an attempt to enforce state law, if the court were forced to go through this analysis. The easy way for the state to respond to this case would have been to simply file a DTPA action in state court, which you then could have defended. Yes. Yes, but that action has not been brought. And on the face of the complaint, as we've alleged and as we believe, there is no basis for such a claim. Equal protection, the Commerce Clause impacts the fact that the free speech aspects of this commercial speech, we have the right to do what everyone else out there is doing. You can use the name of a prescription drug in your labeling if you do it in a non-misleading manner. Now what the state has asserted is, it's misleading ipsy dixy. Well, that's not fair. That's not right. And the fact of the matter is, if the state's argument is to be accepted, then any time there's an enforcement action by a state actor that happens to violate federal law as well, you still have to go through the state courts, because it's a defense. And the other analogy I think of is medical actions against doctors in the Texas Medical Board, where they normally don't send, I mean, even with doctors, they don't normally send letters out to all of their patients before the doctor has undergone a due process proceeding. Yes, and the implications of this decision are incredible when it comes to the commerce in the United States. That's why you have to think there's a case somewhere, and neither side cited us cases that I think are reliable. I think this is a unique circumstance in that this one state actor made a decision and then took action and found a way to end run the entire process, and not only affect sales within the state where that state actor had jurisdiction, but also essentially put my client out of business nationwide, which is a serious power and needs to be exercised in a reasonable way. And I think that the authorities that we cited with regard to our constitutional claims support that. Another issue that's interesting is if you look at the letter, there is no allegation that our product doesn't work, as stated on the packaging. Are they alleged mislabeling, misleading label? Yeah. They claim, Ipsy Dixit, that it's misleading. And obviously, on the face of our pleading, we have alleged that it is not misleading. We do not believe it is misleading. Federal law allows, and it happens all the time, where dietary supplements incorporate the name of a prescription drug as part of their labeling. And then, in the labeling, we've actually, you know, very specifically talked about most people think that that prescription drug doesn't work for this. No, we're not going to trial of merits today. That's what I'm hoping, Your Honor. Yes. Which goes to our point that this is a 12B6 motion. This is a motion to dismiss. And the standard for a motion to dismiss, all ambiguities, all inferences resolved in favor of the non-moving party. We have stated on the face valid constitutional claims that invoke federal jurisdiction and that allege ongoing harm and prospective relief for that past harm and on continuing harm. And therefore, the trial court should be reversed, and this should be remanded for proceedings consistent with that. Thank you, Mr. Parkinson. Thank you. Thank you, Counsel.